O
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORTHOPAEDIC HOSPITAL,<br><br>               Plaintiff,<br>     v.<br>DEPUY ORTHOPAEDICS, INC.,<br><br>               Defendant. | Case No. 2:12-cv-11004-ODW(PLAx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER CASE [11]** |

## I. INTRODUCTION

Six months ago, Defendant Depuy Orthopaedics, Inc. filed an action in the Northern District of Indiana, seeking a declaratory judgment establishing whether a particular agreement was still in effect. In December 2012, Plaintiff Orthopaedic Hospital filed this case in the Central District of California, alleging claims broader—though substantially related—to those in DePuy's action. DePuy then moved to dismiss, transfer, or stay Orthopaedic Hospital's later-filed case. After considering the first-to-file rule and principles of judicial economy, the Court **GRANTS** DePuy's Motion and **TRANSFERS** this case to the Northern District of Indiana.[1]

## II. FACTUAL BACKGROUND

Orthopaedic Hospital is a nonprofit public benefit corporation organized under California law and has its principal place of business in Los Angeles, California.

---

[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

1  (Compl. ¶ 11.)  Depuy Orthopaedics, Inc. is incorporated and has its principal place of
2  business in Indiana.  (*Id.* ¶ 12)

3        On March 1, 1999, Orthopaedic Hospital and DePuy entered into a Research
4  Agreement and a Patent Rights and License Agreement.  (*Id.* ¶¶ 16–17.)  The parties
5  renewed the Research Agreement on February 1, 2002.  (*Id.* ¶ 16.)  On June 24, 1999,
6  the parties amended the License Agreement.  (*Id.* ¶ 17.)

7        Under the Research Agreement, the parties agreed to work together to identify
8  new polyethylene materials and processes for fabricating polyethylene components
9  that could improve the durability of orthopaedic implants.  (*Id.* ¶ 20.)  Orthopaedic
10 Hospital licensed the intellectual property developed by its employees to DePuy in
11 exchange for royalties.  (*Id.* ¶ 29.)  The License Agreement obligated DePuy to pay
12 the royalties on net sales "for the longer of seven years or the life [of an issued patent
13 that is subject to the Research Agreement]."  (*Id.* ¶ 35.)

14       One invention that allegedly falls under the scope of the Research Agreement is
15 antioxidant polyethylene technology ("AOX").  (*Id.* ¶ 50.)  The parties allegedly
16 developed AOX together.  (*Id.*)  In the fall of 2011, Orthopaedic Hospital asserts that
17 DePuy began incorporating parts made of AOX into its products.  (*Id.* ¶ 67.)  But to
18 date, Orthopaedic Hopsital contends that DePuy has not paid Orthopaedic Hospital
19 any royalties based on its AOX sales.  (*Id.* ¶ 70.)

20       On February 16, 2012, DePuy told Orthopaedic Hospital that DePuy believed
21 the License Agreement was no longer in force.  (*Id.* ¶ 64.)  The next month,
22 Orthopaedic Hospital's Vice President for Research, Dr. Harry McKellop, responded
23 to DePuy, contending that the License Agreement was still valid.  (McKellop Decl.
24 Ex. 2.)  Dr. McKellop also said that it "would be the height of folly to turn this matter
25 over to the lawyers."  (*Id.*)  DePuy's Vice President for Medical Affairs Tony Cutshall
26 told Dr. McKellop that DePuy needed more time to review the Hospital's arguments.
27 (*Id.* Exs. 3, 5.)
28 / / /

On June 11, 2012, DePuy filed an action in the Northern District of Indiana for a declaratory judgment establishing that DePuy has not breached the License Agreement. (Mot. 1.) Six months later on December 28, 2012, Orthopaedic Hospital initiated this action, alleging claims for breach of the Research Agreement; breach of the License Agreement; breach of an implied-in-fact contract; promissory estoppel; quantum meruit; unfair, misleading, and deceptive business practices; and fraud. On February 19, 2013, DePuy filed this Motion to Dismiss, Transfer or Stay. (ECF No. 11.) Orthopaedic Hopsital timely opposed. (ECF No. 13.) That Motion is now before the Court for decision.

### III. LEGAL STANDARD

Under the "first-to-file rule," a federal court may decline to exercise jurisdiction over a later filed case involving substantially the same parties and issues as another case previously filed in another federal court. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). The rule vests the second court with discretion to dismiss, transfer, or stay the later-filed case. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991).

In its determination whether to apply the first-to-file rule, a court looks to three factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). But the issues involved in each case need not be identical; rather, the first-to-file rule only requires "substantial overlap." *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959–60 (N.D. Cal. 2008).

### IV. DISCUSSION

DePuy moves to dismiss, transfer, or stay Orthopaedic Hospital's later-filed action under the first-to-file rule. Orthopaedic Hospital disagrees that the rule applies, arguing that both cases involve dissimilar issues and that DePuy acted improperly in filing its "narrow" declaratory-judgment action first in the Northern District of Indiana. The Court considers each party's arguments in turn.

### A. First-to-file rule

DePuy argues that since it filed its declaratory-judgment action first in the Northern District of Indiana, this Court should dismiss, transfer, or stay Orthopaedic Hospital's case under the first-to-file rule. DePuy points out that it filed its case more than six months before Orthopaedic Hospital filed this action, and both matters involve identical parties. DePuy also contends that the issues in both cases are substantially similar because both actions pertain to the same central issue: whether DePuy is still contractually obligated to pay royalties to Orthopaedic Hospital under the Research Agreement for AOX-product sales.

Orthopaedic Hospital disagrees, arguing that both cases do not overlap. DePuy only seeks "narrow declaratory relief" that it did not breach the Research Agreement. (Opp'n 9.) The Indiana action involves no more issues than that. Orthopaedic Hospital contends that DePuy has not, and cannot, explain how the declaratory relief it seeks envelops the Hospital's additional tort claims brought in this action. The only factual overlap—whether DePuy breached the License Agreement—"does not render otherwise different cases substantially similar for the purposes of the first-to-file rule." (*Id.*)

Neither party disputes that the first two factors of the first-to-file rule are met here, namely, that DePuy filed its Indiana action first and that the parties are identical in both cases. As far as identity of the issues, Orthopaedic Hospital's Complaint undoubtedly involves a greater number of claims and, accordingly, factual issues. But DePuy correctly observes that both actions center on the same issue, that is, whether DePuy breached the License Agreement by declining to pay further royalties on sales of AOX products. In fact, Orthopaedic Hospital's second claim involves exactly that issue. And the Hospital pleads its third through sixth claims in the alternative, assuming that the License Agreement did in fact terminate on March 1, 2006. The bulk of Orthopaedic Hospital's claims thus hinges on the central factual dispute involving DePuy's alleged breach of the License Agreement.

To the extent that Orthopaedic Hospital's Complaint involves additional issues, it makes the most sense to transfer this action to the Northern District of Indiana. With that resolution, neither party will be left without a forum for its claims. And transferring this case will also conserve judicial resources, especially considering that the Northern District of Indiana is already poised to resolve DePuy's declaratory-judgment action.

**B.     No exceptions apply**

Even if the first-to-file rule's requirements are met, a court may dispense with the rule for reasons of equity. *Ward*, 158 F.R.D. at 648. The most common exceptions are bad faith, anticipatory suit, and forum shopping. *Alltrade, Inc.*, 946 F.2d at 628.

Orthopaedic Hospital argues that the Court should not apply the first-to-file rule, because DePuy essentially seeks an order from this Court requiring Orthopaedic Hospital to litigate all its claims against DePuy in Indiana, "regardless of whether they relate to DePuy's narrow declaratory judgment." (Opp'n 10.) But the Hospital notes that the Indiana Court did not determine whether DePuy's pre-suit actions constituted an "improper race to the courthouse." (*Id.* at 12.)

DePuy contends that it did not file an anticipatory suit, because it never asked Orthopaedic Hospital to forgo legal action while DePuy investigated the Hopsital's interpretation of the License Agreement. What's more, DePuy argues that it has not engaged in forum shopping, because its offices are located in Indiana and that is where DePuy negotiated both agreements.

Orthopaedic Hospital has not demonstrated that DePuy engaged in any bad-faith conduct. There was no "race to the courthouse," as DePuy filed its action a full six months before Orthopaedic Hospital. And DePuy never attempted to dissuade Orthopaedic Hospital from promptly filing a complaint, as Dr. McKellop specifically told DePuy that it "would be the height of folly to turn this matter over to the lawyers." (McKellop Decl. Ex. 2) Neither does it appear that DePuy scoured the

country in search of the most advantageous forum; rather, DePuy filed suit in its own backyard—in close proximity to relevant evidence, witnesses, and orthopaedic-product knowledge.

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** DePuy's Motion to Transfer and accordingly **TRANSFERS** this action to the United States District Court for the Northern District of Indiana, as a related case to Case No. 3:12-cv-00299-RL-CAN.

**IT IS SO ORDERED.**

April 30, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**